RECEIVED
09 MAR -5 AM 10: 10
CLERK, U.S. DIST COURT
MINNEAPOLIS, MN

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Plaintiff,<br><br>　　　v.<br><br>RENTAL RESEARCH SERVICES, INC.<br>　　　a corporation, and<br><br>LEE MIKKELSON,<br>　　　individually and as an<br>　　　officer of the corporation,<br>　　　　　Defendants. | Civil Action No. 09cv 524 PJS/JJK |

**COMPLAINT FOR CIVIL PENALTIES,
INJUNCTIVE AND OTHER EQUITABLE RELIEF**

Plaintiff, the United States of America, acting upon notification and authorization to the Attorney General by the Federal Trade Commission ("FTC" or "Commission"), for its Complaint alleges that:

1.　　Plaintiff brings this action under Sections 5(a), 13(b), and 16(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a), 53(b), and 56(a), and Section 621(a) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. 1681s(a), to obtain monetary civil penalties, and injunctive and other equitable relief from Defendants for engaging in acts or practices

-1-

SCANNED
MAR 0 5 2009
U.S. DISTRICT COURT MPLS

violating Section 5(a) of the FTC Act, 15 U.S.C. § 45(a) and the FCRA, 15 U.S.C. §§ 1681- 1681x.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355 and under 15 U.S.C. §§ 45(a), 53(b) 56(a), and 1681s.

3. Venue in the District of Minnesota is proper under 15 U.S.C. § 53(b) and under 28 U.S.C. §§ 1391(b)-(c) and 1395(a).

## DEFENDANTS

4. Defendant Rental Research Services, Inc. ("RRS"), is a Minnesota corporation, with its principal place of business at 7525 Mitchell Road, Eden Prairie, Minnesota 55344. RRS transacts or has transacted business in this district.

5. Defendant Lee Mikkelson is the Vice-President and Managing Officer of RRS. His business address is the same as that of RRS. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, or participated in the acts and practices of RRS, including the various acts and practices set forth in this Complaint. He transacts or has transacted business in this district.

## COMMERCE

6. The acts and practices of Defendants alleged in this Complaint have been in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## THE FAIR CREDIT REPORTING ACT

7. The FCRA was enacted in 1970, became effective on April 25, 1971, and has been in force since that date. The Fair and Accurate Credit Transactions Act amended the FCRA in December 2003.

8. Section 621 of the FCRA, 15 U.S.C. § 1681s, authorizes the Commission to use all of its functions and powers under the FTC Act to enforce compliance with the FCRA by all persons subject thereto except to the extent that enforcement specifically is committed to some other governmental agency, irrespective of whether the person is engaged in commerce or meets any other jurisdictional tests set forth by the FTC Act.

9. RRS is in the business of selling tenant screening reports, which are used by landlords and others for consumer eligibility determinations, such as whether to rent an apartment to a given individual. The tenant screening reports that RRS provides to third parties are consumer reports as defined in section 603(d) of the FCRA, 15 U.S.C. §1681a(d). That section defines a "consumer report" as

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 604.

RRS's tenant screening reports are communicated to third parties; bear on the consumer's credit standing, mode of living, and/or other attributes listed in section 603(d); and are used as a factor in determining the consumer's eligibility for a purpose specified in section 603(d).

10. In providing tenant screening reports, RRS is now and has been a "consumer reporting agency" as that term is defined in section 603(f) of the FCRA, 15 U.S.C. § 1681a(f). That section defines a "consumer reporting agency" as

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer

reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

RRS regularly sells in interstate commerce information on consumers (including credit account information and credit scores) that it assembles for the purpose of furnishing consumer reports to its clients.

## DEFENDANTS' BUSINESS PRACTICES

11. Defendants contract with CSC Corporation, a consumer reporting agency, to obtain consumer reports which Defendants assemble and merge into their tenant screening reports and sell to their own customers. The consumer reports that Defendants obtain contain credit account and public record information from Equifax, Inc., a nationwide consumer reporting agency, and credit scores from Fair Isaac Corporation.

12. Defendants sell tenant screening reports online to businesses and individuals. Tenant screening reports are one type of consumer report, and contain the personal information of consumers, including names, Social Security numbers, dates of birth, bank and credit card account numbers, and credit histories, much of which is sensitive and not publicly available. RRS obtains consumer data from other consumer reporting agencies; the company collects the information without making any contact with the consumers whose information it sells, and consumers cannot prevent RRS from obtaining their personal information.

13. RRS does not have written procedures for its employees to use in screening the applications of new customers, and instead relies on informal screening procedures. To obtain consumer report information from RRS, a potential customer fills out an application online through RRS's website, www.rentalresearch.com. The application asks that the applicant

provide a name, company name, company type, state of incorporation, number of years in business, number of rental units managed, address, e-mail address, telephone number, fax number, and website (if applicable, but not required). After receiving the online application, RRS purports to check whether the applicant's website exists, if it lists one, and to consult business directories to see if the business exists. For many applicants, RRS does not request any further information and approves the application. Once approved, the customer is e-mailed login and password information and may purchase an unlimited number of RRS consumer reports from www.rentalresearch.com. The approval process is a one-time event, and once approved a customer is not subjected to any further screening by RRS.

14. RRS claims to request documentation from some applicants, which documentation may include personal identification, property tax statements, telephone bills, voided checks, rental ads, management agreements, executed lease agreements, and/or Secretary of State certificates. RRS does not have guidelines to determine under what circumstances applicants will be required to provide documentation, and instead makes decisions on an ad hoc basis. RRS also lacks consistent standards for determining the type of documentation required or the factors used to assess the appropriateness or validity of the documentation supplied.

15. From January 4 through February 3, 2006, RRS sold at least 318 consumer reports to identity thieves. On January 2, 2006, identity thieves claiming to be a person with the initials C.N., who is an actual person operating a legitimate business, filled out an online application with RRS using publicly-available information. The thieves provided a name, a business name, number of years in business, number of rental units managed, a physical address, a Hotmail e-mail address, a cellular telephone number, a fax number, and a statement that the individual

sought consumer reports for renting a 150-unit property that he owns. On or before January 4, 2006, RRS approved the application without seeking any further information or documentation, or performing any investigation. RRS then e-mailed a login ID and password to the Hotmail e-mail address on the application. These credentials gave the identity thieves unlimited, online access to consumer reports, which they used to purchase at least 318 consumer reports.

16. On January 31, 2006, a consumer contacted RRS after he noticed the notation of an inquiry by RRS on his consumer report and believed his identity had been stolen. RRS personnel told the consumer that C.N. had requested a copy of his consumer report, and the consumer advised RRS personnel that he had not authorized C.N. to access his report. RRS took no further action regarding C.N.'s account at that time. On February 6, 2006, a second consumer contacted RRS stating that his consumer report had been impermissibly accessed. When RRS discovered that this consumer's report also had been requested by C.N., it sought but was unable to obtain an explanation from the individual purporting to be C.N. Accordingly, RRS disabled C.N.'s account, preventing access to any more consumer reports.

17. Defendants failed to prevent the disclosure of consumer reports to identity thieves because Defendants' practices and procedures, taken together, do not constitute reasonable procedures to verify or authenticate the identities and qualifications of prospective subscribers. Among other things, Defendants failed to: establish procedures to determine whether and when to require supporting documentation from applicants to verify their identities and their certified permissible purposes for obtaining consumer reports; take reasonable steps to verify information provided by RRS's applicants and follow up to address any inconsistencies, such as by requiring information from applicants that is not simply available in public resources (and could, therefore,

be readily obtained by an identity thief); and monitor users' ongoing activities in order to limit the furnishing of consumer reports to the purposes listed under section 604 of the FCRA, such as by failing to detect a high volume of requests that was inconsistent with the information provided by the identity thieves in their application for access.

## VIOLATIONS OF THE FCRA

### COUNT I

18. Section 604 of the FCRA, 15 U.S.C. § 1681b, prohibits a consumer reporting agency from furnishing a consumer report except for specified "permissible purposes."

19. As described in Paragraphs 7 through 17, in at least 318 instances, Defendants furnished consumer reports to persons that did not have a permissible purpose to obtain a consumer report.

20. By and through the acts and practices described in Paragraph 19, Defendants have violated Section 604 of the FCRA, 15 U.S.C. § 1681b.

### COUNT II

21. Section 607(a) of the FCRA, 15 U.S.C. § 1681e(a), requires every consumer reporting agency to maintain reasonable procedures to limit the furnishing of consumer reports to the purposes listed under Section 604 of the FCRA, 15 U.S.C. § 1681b, including making reasonable efforts to verify the identity of each new prospective user of consumer report information and the uses certified by each prospective user prior to furnishing such user a consumer report.

22. As described in Paragraphs 7 through 17, Defendants have failed to maintain reasonable procedures to limit the furnishing of consumer reports to the purposes listed under

Section 604 of the FCRA, have failed to make reasonable efforts to verify the identity of each new prospective new user of consumer report information, and have failed to make reasonable efforts to verify the uses certified by each prospective user prior to furnishing such user a consumer report.

23. By and through the acts and practices described in Paragraph 22, Defendants have violated Section 607(a) of the FCRA, 15 U.S.C. § 1681e(a).

## COUNT III

24. Section 607(e)(2) of the FCRA, 15 U.S.C. § 168le(e)(2), requires any person who procures a consumer report for purposes of reselling the report to establish and comply with reasonable procedures designed to ensure that the report is resold only for a purpose for which the report may be furnished under Section 604 of the FCRA, 15 U.S.C. § 1681b.

25. As described in paragraphs 7 through 17, Defendants procure consumer reports for the purposes of reselling those reports, but did not establish and comply with reasonable procedures to ensure that the reports were resold only for purposes authorized by Section 604 of the FCRA.

26. By and through the acts and practices described in Paragraph 25, Defendants have violated Section 607(e) of the FCRA, 15 U.S.C. § 1681e(e).

27. Pursuant to Section 621(a) of the FCRA, 15 U.S.C. § 1681s(a), the acts and practices alleged in paragraphs 20, 23, and 26 also constitute unfair and deceptive acts or practices in violation of Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF SECTION 5 OF THE FTC ACT

28. As described in Paragraphs 7 through 17, Defendants have not employed reasonable and appropriate measures to secure the personal information RRS collects for sale to its customers, including reasonable policies and procedures to (1) verify or authenticate the identities and qualifications of prospective subscribers; or (2) monitor or otherwise identify unauthorized subscriber activity.

29. Defendants' failure to employ reasonable and appropriate security measures to protect consumers' personal information has caused or is likely to cause substantial injury to consumers that is not offset by countervailing benefits to consumers or competition and is not reasonably avoidable by consumers. This practice was, and is, an unfair act or practice in or affecting commerce in violation of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a).

## THIS COURT'S POWER TO GRANT RELIEF

30. Section 621(a)(2)(A) of the FCRA, 15 U.S.C. § 1681s(a)(2)(A), authorizes the Court to award monetary civil penalties of not more than $2,500 per violation of the FCRA in the event of a knowing violation, which constitutes a pattern or practice of violations. Defendants' violations of Sections 604, 607(a), and 607(e) of the FCRA, as alleged in this Complaint were knowing and constituted a pattern or practice of violations.

31. Each instance in which Defendants have failed to comply with Section 604 or 607 of the FCRA, 15 U.S.C. §§ 1681b and 1681e, constitutes a separate violation of the FCRA for the purpose of assessing monetary civil penalties under Section 621 of the FCRA. Plaintiff seeks monetary civil penalties for every separate violation of the FCRA.

32. Under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), this Court is authorized to issue a permanent injunction prohibiting Defendants from violating the FCRA and the FTC Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court, pursuant to 15 U.S.C. §§ 45(a)(1), 53(b), 56(a), and 1681s, and pursuant to the Court's own equitable powers:

(1) Enter judgment against Defendants and in favor of Plaintiff for each violation charged in this Complaint;

(2) Award Plaintiff monetary civil penalties from Defendants for each violation of the FCRA alleged in this Complaint;

(3) Enter a permanent injunction to prevent future violations of the FCRA and the FTC Act by Defendants;

(4) Order Defendants to pay the costs of this action; and

(5) Award Plaintiff such other and additional relief as the Court may determine to be just and proper.

Dated:

| | |
|---|---|
| OF COUNSEL: | **FOR THE PLAINTIFF**<br>**UNITED STATES OF AMERICA:** |
| JOEL WINSTON<br>Associate Director<br>Division of Privacy and Identity Protection | MICHAEL F. HERTZ<br>Acting Assistant Attorney General<br>Civil Division<br>United States Department of Justice |
| REBECCA E. KUEHN<br>Assistant Director<br>Division of Privacy and Identity Protection | FRANK J. MAGILL JR.<br>United States Attorney<br>District of Minnesota |
| SANDRA MCCARTHY<br>Attorney<br>Division of Privacy and Identity Protection | */s/ Ana H. Voss*  |
| MOLLY CRAWFORD<br>Attorney<br>Division of Privacy and Identity Protection<br>Federal Trade Commission<br>Washington, D.C. 20580 | Assistant United States Attorney<br>600 U. S. Courthouse<br>300 South Fourth Street<br>Minneapolis, MN 55415<br>612-664-5600<br>612-664-5787 (fax) |
| | EUGENE M. THIROLF<br>Director<br>Office of Consumer Litigation |
| | KENNETH L. JOST<br>Deputy Director<br>Office of Consumer Litigation |
| | */s/ Daniel K. Crane-Hirsch*<br>DANIEL K. CRANE-HIRSCH<br>Trial Attorney<br>Office of Consumer Litigation<br>U.S. Department of Justice<br>PO Box 386<br>Washington, D.C. 20044<br>202-616-8242<br>202-514-8742 (fax)<br>Daniel.Crane-Hirsch@usdoj.gov |